**Rudolph HOPE, Petitioner,**

v.

**IMMIGRATION SERVICE (BICE), Respondent.**

No. 04–CV–1625 (DLI).

United States District Court, E.D. New York.

Oct. 22, 2004.

Rudolph Hope, Hackensack, NJ, pro se.

Timothy Maguire, United States Attorney's Office, Brooklyn, NY, for Defendant.

### *MEMORANDUM AND ORDER*

IRIZARRY, District Judge.

Petitioner, Rudolph Hope, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. For the reasons discussed below, that petition is denied, in part, insofar as it challenges the determinations of the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA"). Insofar as petitioner alleges ineffective assistance of counsel, this Court will postpone its ruling pending resolution of petitioner's motion to reopen his deportation proceedings. This Court's Order staying Petitioner's deportation dated April 20, 2004 remains in full force and effect.

### PROCEDURAL HISTORY

Hope is a thirty-one-year-old native and citizen of Guyana. (Decl. Ex. 1., "Immigrant Visa and Alien Registration").[1] In 1987, Hope was admitted to the United States as a lawful permanent resident. *Id.*

On July 29, 1994, Hope was convicted, upon his plea of guilty, of criminal possession of a weapon in the third degree in violation of New York State law. (Decl. Ex. 2, "Sentence and Order of Commitment" in the matter of *People of the State of New York v. Hope*). On December 9, 1994, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause alleging that Hope was deportable pursuant to section 241(a)(2)(C) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1227(a)(2)(C), which provides for deportation of aliens who, "at any time after admission [are] convicted under any law of ... possessing ... a firearm...." (Decl. Ex. 3, "Order to Show Cause and Notice of Hearing").

The INS commenced deportation proceedings against Hope. (Decl. Ex. 4, "Transcript of Deportation Proceedings"). Hope conceded his deportability and filed for an adjustment of status pursuant to section 245 of the Act, 8 U.S.C. § 1255(a), as relief from deportation.[2] (IJ Dec.).[3] On October 18, 1996, the IJ held a hearing to determine the merits of Hope's application for an adjustment of status. (Decl.Ex. 4). During that hearing, Hope was represented by counsel.

The IJ concluded that Hope was statutorily eligible for an adjustment of status, but declined to exercise her discretion to grant Hope's application. (IJ Dec.) The IJ determined that a favorable exercise of

---

1. "Decl." refers to the "Declaration of Special Assistant United States Attorney Timothy Maguire" dated June 21, 2004.

2. Judge Cabranes, writing for the Second Circuit, succinctly described an adjustment of status as follows:

 'Adjustment of status' is a form of relief that allows a deportable alien who would be admissible to the United States if he were seeking to enter the country to adjust his status to that of an alien seeking entry. [citations omitted]. Like § 212(c) relief

from deportation, an adjustment of status under § 245(a) is entirely discretionary. Thus, even where an alien satisfies the statutory requirements of eligibility for an adjustment of status ..., the INS has discretion under section 245 to deny the application.

 *Drax v. Reno,* 338 F.3d 98, 119 (2d Cir.2003) (internal quotes and citations omitted).

3. "IJ Dec." refers to the Written Decision of the Immigration Judge dated April 4, 1997.

discretion was not warranted because, while Hope had demonstrated several positive factors, including a mother and daughter who are United States citizens, numerous unfavorable factors weighed heavily against him. *Id.* at 4. In particular, the IJ noted Hope's failure to take responsibility for the offense for which he was convicted. *Id.* Despite his guilty plea, Hope insisted that he was "set up" and testified that he never picked up or possessed the pistol. *Id.* In addition, the IJ noted Hope's "abysmal driving record," which included three suspensions/revocations and numerous occasions on which Hope failed to appear in court. *Id.* at 5. The final court date for which Hope failed to appear was for driving without insurance. *Id.*

The IJ also expressed concern about Hope's submission of only a 1995 tax return, despite his alleged long work history, as well as the contradictory and false information it contained. *Id.* The IJ observed that the return itself listed Hope's brother as his son and listed Hope himself as an exemption. *Id.* The IJ found that Hope did not take responsibility for these misstatements when questioned at the hearing. *Id.* The IJ also was troubled by contradictory evidence regarding the amount of support Hope provided to his mother and his daughter's mother. *Id.* Finally, the IJ noted that Hope did not own a business or any property in the United States nor did he have any ties to his community through groups or organizations. *Id.*

Based upon these findings, on April 4, 1997, the IJ denied Hope's application for adjustment of status. *Id.* at 6. Through

counsel, Hope appealed this decision to the BIA. (Decl. Ex. 10, "Brief on Appeal"). The BIA denied that appeal on July 20, 1998. (BIA Dec.).[4] On March 24, 2004, Hope was taken into INS custody after being stopped by the New York Police Department a day earlier.[5] (Pet.).[6] On April 15, 2004, Hope filed the instant petition *pro se* and was granted a stay of deportation on April 20, 2004. *Id.* On May 4, 2004, Hope filed with the BIA a motion to reopen his deportation proceedings. (Decl.Ex. 14). In that motion, Hope, through new counsel, argues that he is eligible for cancellation of removal and that he was denied effective assistance of counsel in his prior deportation proceeding because counsel failed to file an application for cancellation of removal. *Id.*

## DISCUSSION

Hope is a *pro se* litigant with respect to the instant petition. Accordingly, the Court must liberally construe his arguments in the light most favorable to him. *See Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)). With this precept in mind, Hope's claims can best be broken down into two categories. First, Hope argues that he was denied effective assistance of counsel at his initial hearing before the IJ. Second, Hope advances a number of mitigating facts in opposition to his deportation, including his support for his mother and daughters, his consistent record of gainful employment since 1994, his lack of criminal record since his 1994 fire-

---

**4.** "BIA Dec." refers to the Decision of the Board of Immigration Appeals in In the Matter of Hope dated July 20, 1998

**5.** The record does not indicate that Hope was charged with any crime in connection with his being stopped by the police.

**6.** References to "Pet." are to Hope's Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2241 and Motion For Stay of Removal filed on April 15, 2004.

arm conviction, and what is essentially a claim that Hope was misled into accepting a guilty plea for that conviction.

### Hope's Ineffective Assistance of Counsel Claim

It is well-settled that a petitioner must exhaust his administrative remedies before seeking *habeas corpus* relief in federal courts. *See e.g., Beharry v. Ashcroft,* 329 F.3d 51, 53 (2d Cir.2003); *Holwell v. INS,* 72 F.3d 288, 291 (2d Cir.1995) ("Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" (quoting *Guitard v. United States Secretary of Navy,* 967 F.2d 737, 740 (2d Cir.1992)).

 In *Arango–Aradondo v. INS,* 13 F.3d 610 (2d Cir.1994), the Second Circuit first addressed the question of whether a court can and should review ineffectiveness of counsel claims not first presented to the BIA. In dismissing the petition for *habeas corpus* review, the Second Circuit adopted the reasoning of the Seventh Circuit in *Rhoa–Zamora v. INS,* 971 F.2d 26 (7th Cir.1992) and *Castaneda–Suarez v. INS,* 993 F.2d 142 (7th Cir.1993), which concluded that

> the failure to move to reopen does not preclude jurisdiction because the exhaustion requirement in the Act provides that courts must not review orders of deportation if the alien has not exhausted the administrative remedies available to him *as of right,* and a motion to reopen is a discretionary remedy.

*Arango–Aradondo* at 614 (internal quotes and citations omitted) (emphasis in original). However, notwithstanding the existence of jurisdiction, the Second Circuit denied the petition for writ of *habeas cor-*

*pus* pending the BIA's determination of the motion to reopen, concluding that,

> for prudential reasons, ineffectiveness claims should be decided by the BIA in the first instance.... [T]his will avoid any premature interference with the agency's processes and, in addition to affording the parties and courts the benefit of the agency's expertise, it will compile a record which is adequate for judicial review.

*Id.* (internal quotes and citations omitted). Thus, while this Court has jurisdiction to adjudicate Hope's claim of ineffective assistance of counsel because he technically has met the exhaustion requirements, prudence counsels a deferral to the BIA in the first instance.

The petitioner in *Arango–Aradondo* alleged ineffective assistance of counsel based on a failure to present evidence to the IJ. In the instant case, Petitioner alleges ineffective assistance based on counsel's failure to make an application for cancellation of removal and to inform Petitioner that his appeal had been denied by the BIA. In concluding that the *habeas* petitioner first must file a petition to reopen his deportation proceedings, the *Arango–Aradondo* Court deemed significant the fact that petitioner's ineffective assistance of counsel claim was based on a failure to present evidence. The Second Circuit found this fact important because the BIA "can reopen the proceedings and, in appropriate circumstances, allow the petitioner to supplement the record with additional evidence." *Arango–Aradondo* at 614. Despite the difference in the premise for Hope's ineffective assistance of counsel claim, I find that the prudential considerations at work in *Arango–Aradondo,* specifically the desire to "'avoid any premature interference with the agency's processes [,] ... afford[] the parties and the courts the benefit of the agency's ex-

pertise, [and] ... compile a record which is adequate for judicial review" are also present here. *Id.; Cf. Elahi v. Ashcroft,* 2002 WL 31433290, at *2 (D.Conn. October 28, 2002) (in deciding whether to consider petitioner's ineffective assistance of counsel claim, the court noted that the grounds underlying petitioner's claim were presented to and considered by the BIA.); *Rabiu v. INS,* 41 F.3d 879, 882 (2d Cir. 1994) (in deciding whether to consider petitioner's ineffective assistance of counsel claim, the court noted that the same facts had been considered by the BIA in the appeal and in the motion to reopen.). These prudential considerations have added significance in the instant case because, with respect to Petitioner's other claims, he requests that this Court consider certain additional evidence not first presented to the IJ in deciding his petition for a writ of *habeas corpus.* If appropriate, the BIA may exercise its discretion to reopen Hope's deportation proceedings to consider this additional evidence.

Accordingly, petitioner's request for *habeas corpus* relief on the basis of ineffective assistance of counsel is denied pending the BIA's determination of his motion to reopen the deportation proceedings. Petitioner may re-file his petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 with this Court under the same docket number after the BIA has ruled on his motion to reopen.

### Petitioner's Other Claims

Hope asserts, chiefly in his reply brief, that the IJ did not properly address issues or consider evidence concerning the facts surrounding Hope's initial firearms conviction. Additionally, Hope claims that the IJ abused her discretion by failing to properly weigh the evidence in support of the relief he sought.

■ Because the INS began Hope's removal proceedings prior to April 1, 1997, and the order of deportation became final after October 30, 1996, the jurisdictional limitations imposed by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") govern this case. *Mejia–Ruiz v. INS,* 51 F.3d 358, 363 (2d Cir.1995) (noting that, upon an appeal, the deportation order becomes final after the BIA affirms); *Sol v. INS,* 274 F.3d 648, 650 (2d Cir.2001). In *Sol,* the Second Circuit explained that

> [t]he [IIRIRA] sets forth 'transitional' rules that by their terms apply to cases, like [petitioner's], where the INS began removal proceedings prior to April 1, 1997, and a resulting deportation order became final after October 30, 1996. The transitional rules provide that 'there shall be no appeal permitted in the case of an alien who is ... deportable by reason of having committed a criminal offense covered in ... section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act.' The enumerated criminal offenses include any 'aggravated felony' and any 'violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... other than a single offense involving possession for one's own use of 30 grams or less of marijuana.'

(internal citations omitted). *Id.* These limitations operate to deprive federal courts of jurisdiction to review factual or discretionary determinations of the immigration courts and the BIA. *Id.* at 651.

Hope's allegations that the IJ abused her discretion by addressing the issues improperly and by improperly weighing the evidence in support of his application are plainly challenges to the factual and discretionary determinations of the IJ. As

explained above, this Court lacks subject matter jurisdiction to consider Petitioner's claims. Accordingly, this prong of the petition is denied. *Id.*[7]

Even if this Court had the authority to review the IJ's denial of Hope's application for adjustment of status, it is clear from the record that the IJ thoroughly considered Hope's application and conscientiously evaluated the testimony of Petitioner, his mother and his daughter's mother, as well as other evidence presented at the hearing. In particular, the IJ found that, although "the Respondent has several positive factors, including a United States citizen mother and daughter, numerous unfavorable factors weigh heavily against the Respondent." (IJ Dec. at 4.). The IJ went on to discuss, in detail, the unfavorable factors, which were Hope's "conviction for a weapons offense, lack of properly filed tax returns, a poor driving history and lack of community ties." *Id.* at 5. In a brief opinion, the BIA affirmed the IJ's decision on similar grounds, concluding "as did the Immigration Judge, that the equities presented are insufficient to outweigh the adverse factors." (BIA Dec.).

## CONCLUSION

WHEREFORE, the petition for writ of *habeas corpus,* to the extent that it challenges the determinations made by the IJ, which were affirmed on appeal by the BIA, is DENIED. This Court will postpone its ruling on Petitioner's claim of ineffective assistance of counsel pending the BIA's determination of Petitioner's motion to reopen the deportation proceedings. It is further ORDERED that this Court's STAY OF DEPORTATION REMAINS IN EFFECT UNTIL: (1) the BIA has ruled on Petitioner's motion to reopen his

deportation proceedings; AND (2) in the event that Petitioner's motion is not granted by the BIA, Petitioner has had an opportunity to re-file this petition under § 2241 in this Court under the same docket number. The Clerk of the Court is directed to close this case.

SO ORDERED

---

7. This Court takes no position as to whether the BIA should grant Hope's pending motion to reopen the deportation proceedings, which is purely a discretionary matter with the BIA. *See INS v. Rios–Pineda,* 471 U.S. 444, 449, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985).